**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **KEVIN A. SOPER,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. MJM-25-1247** |
| **TOWN OF ELKTON, MARYLAND, *et al.*,** | * | |
| **Defendants.** | * | |

* * * * * * * * * *

# MEMORANDUM OPINION

Self-represented plaintiff Kevin A. Soper ("Plaintiff") filed this civil action against the Town of Elkton,[1] Elkton Police Department Chief Carolyn Rogers ("Chief Rogers"), and three officers of the Elkton Police Department—Officer Charles Lowery ("Ofc. Lowery"), Officer Justin Farren ("Ofc. Farren"), and Corporal Jakob Brown ("Cpl. Brown") (collectively, the "Officer Defendants"). ECF No. 1. On February 17, 2026, all Defendants filed a joint motion to dismiss. ECF No. 13. Plaintiff filed a response in opposition to the motion, ECF No. 15, to which Defendants filed a reply, ECF No. 16. A hearing is not necessary to resolve the motion. Loc. R. 105.6 (D. Md. 2025). For the reasons stated herein, the motion to dismiss is granted as to the claims asserted against the Town of Elkton and Chief Rogers, and it is denied as to claims against the Officer Defendants in their individual capacities for deprivation of rights to free speech and assembly.

[1] The docket shall be corrected to reflect the correct name of this municipal defendant: Town of Elkton, Maryland.

## I. BACKGROUND

Plaintiff is a veteran of the U.S. Navy and U.S. Coast Guard and advocates for homeless veterans. ECF No. 1-1 ("Compl.") ¶ 1. He travels around the country and stands on public sidewalks, steps of city halls, and other public spaces, holding a sign displaying the words "Donate to a Homeless Veteran." *Id.* ¶ 2. Although Plaintiff does not intend for his activities to solicit money, the public occasionally offers him money on the assumption that he is homeless, which he is not. *Id.* Plaintiff typically refuses financial donations, tells those who offer them that he is not homeless, and suggests that they consider donating to homeless veterans. *Id.* Plaintiff occasionally accepts financial donations, but he does not keep it for himself; he gives the money to homeless veterans. *Id.*

On the afternoon of May 24, 2024, Plaintiff stood on various public sidewalks in Elkton, Maryland. *Id.* ¶ 3. He held a sign displaying "Donate to a Homeless Veteran" and wore a hospital-type gown to draw attention to his message. *Id.* ¶ 4. While standing on a sidewalk in front of Elkton's City Hall, Ofc. Lowry approached Plaintiff and told him that he "can't do this right here." *Id.* Plaintiff responded, "Do what?" *Id.* Ofc. Lowry replied, "panhandling." *Id.* When Plaintiff responded that he was not panhandling, Ofc. Lowry replied that "you can't do that here, at least," gesturing toward Plaintiff's sign. *Id.* Plaintiff walked into the City Hall building and used the bathroom. *Id.* Plaintiff returned to the sidewalk intersection where he was standing previously. *Id.*

Later the same day, Plaintiff returned to City Hall and asked to speak to Ofc. Lowry, seeking clarity on whether he was allowed to stand outside with his sign. *Id.* ¶ 5. An off-duty police officer advised Plaintiff that panhandling is illegal in Elkton and a "citable offense." *Id.* Plaintiff asked to speak to a duty Sergeant, intending to ask more questions about what activities were allowed. *Id.* Soon thereafter, Plaintiff met Ofc. Farren in the lobby of City Hall. *Id.* ¶ 6. Ofc. Farren

explained to Plaintiff that "yeah, it's a charge—you can be charged with panhandling" and "it's pretty much soliciting people for money so it's illegal." *Id.* When Plaintiff asked if he could go to jail, Ofc. Farren responded that, "if you want to panhandle, go outside of town," and suggested that Plaintiff consider going to Delaware. *Id.*

Cpl. Brown then entered the lobby of City Hall, and Plaintiff asked him whether panhandling was allowed. *Id*. ¶ 7. Cpl. Brown told Plaintiff, "Here's the deal, buddy. You can't panhandle in the State of Maryland it's a traffic offense. So if you panhandle, especially on the roadway you'll receive a ticket." *Id.* Cpl. Brown further replied that Plaintiff can be on city property during normal business hours and stand there but not after normal business hours unless it is an emergency. *Id.*

Plaintiff began to leave the lobby of City Hall, and Ofc. Farren and Cpl. Brown followed him. *Id*. ¶ 8. Plaintiff asked if he would be arrested for soliciting. *Id.* The officers repeated that Plaintiff could receive a traffic citation that he could pay or contest in court. *Id.* Plaintiff asked the amount of the citation, and the officers indicated that they did not know. *Id.* Plaintiff asked the officers "if they could find out how much the ticket is." *Id.* Ofc. Farren advised Plaintiff that, if they had to continue to deal with him and ask him to stop panhandling, he could "be locked up for failure to obey," which is a "criminal charge" for which he could be jailed. *Id.*

Cpl. Brown then asked Plaintiff if he needed any help or resources. *Id*. ¶ 9. Plaintiff responded that he was just "out here advocating for homeless veterans[.]" *Id*. Cpl. Brown responded that if Plaintiff is just trying to get people to donate, "then that's just a sign to donate to homeless veterans." *Id.* Plaintiff then asked, "that's not panhandling?" *Id.* Cpl. Brown responded, "are you asking for yourself or just homeless veterans in general?" *Id.* Plaintiff responded that he is a veteran and asked, "so I can't take the money?" *Id.* Ofc. Lowry then joined the conversation.

*Id.* Cpl. Brown then stated that, "I wouldn't make the mistake of panhandling." *Id.* Plaintiff again asked if the officers could find out how much the fine is. *Id.* Ofc. Farren said, "It's more than you can gain from panhandling." *Id.* The officers broke off the conversation, and Plaintiff, "under advisement" from the officers, left town. *Id.*

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure constitutes an assertion that, even if the facts alleged by a complainant are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). This rule is to give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S.

10, 11 (2014) (per curiam). However, "a [complainant]'s obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (third alteration in *Iqbal*). Although, on a motion to dismiss, the court is generally limited to the facts as alleged, the court may consider "documents that are explicitly incorporated into the complaint by reference," and "those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and Fed. R. Civ. P. 10(c)). In addition, the court may take judicial notice of matters in the public record and publicly available information on state and federal government websites. *See, e.g.*, *Est. of Green v. City of Annapolis*, 696 F. Supp. 3d 130, 147 (D. Md. 2023).

When considering a motion to dismiss, a court must take the factual allegations as true and draw all reasonable inferences in favor of the complainant. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the complainant's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert denied*, 566 U.S. 937 (2012).

"[*P*]*ro se* filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (second alteration in original) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). "[L]iberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff,' but only to determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)).

## III. DISCUSSION

### A. Claim 1

In Claim 1 of his Complaint, Plaintiff alleges that the Officer Defendants violated his rights to freedom of speech and assembly under the First Amendment by threatening him with arrest for engaging in protected activities. For present purposes, Defendants concede that Plaintiff's actions constituted constitutionally protected free speech in a public forum. ECF No. 13-1 at 12. Plaintiff further alleges that the Officer Defendants misrepresented that a traffic statute prohibited his actions and seeks $10,000 in "punitive relief" from the Officer Defendants in their individual and official capacities. *See* Compl. ¶ 15.

Defendants argue that Claim 1 fails for two reasons. First, they argue that Claim 1, to the extent it is asserted against the Officer Defendants in their official capacities, is, "in substance, . . . a vicarious liability claim, which is not available under 42 U.S.C. §1983." ECF No. 13-1 at 13.

Second, they argue that the claim against the Officer Defendants in their individual capacities must be dismissed because Plaintiff did not include a prayer for relief for actual damages, and, although Plaintiff included a prayer for relief for punitive damages, Plaintiff's allegations are insufficient as a matter of law. *See id.* at 14–15; ECF No. 16 at 4.

Title 42, United States Code, Section 1983 imposes liability on any "person" who, under the color of state law, causes the "deprivation of any rights, privileges, or immunities secured by the Constitution." The statute thus permits "[p]ersonal-capacity suits seek[ing] to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). But government officials cannot be sued for monetary damages in their official capacities under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." (citation omitted)); *Smith v. Aita*, Civ. No. CCB-14-3487, 2016 WL 3693713, at *3 (D. Md. July 12, 2016), *aff'd*, 711 F. App'x 163 (4th Cir. 2018) ("Although the officers may be held liable under § 1983 in their individual capacities[,] state officials 'acting in their official capacities' are not subject to liability under § 1983[.]" (citations omitted)). Thus, to the extent Claim 1 seeks damages from the Officer Defendants in their official capacities, that part of Claim 1 shall be dismissed.

The Officer Defendants' second argument—that Plaintiff failed to plead recoverable damages—does not warrant dismissal at this stage. Defendants contend that Plaintiff failed to request actual damages and that his allegations are insufficient to support punitive damages. It is true that punitive damages are available in a § 1983 action only where the defendant's conduct is "motivated by evil motive or intent" or reflects "reckless or callous indifference to the federally

protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). But in Part VI of the Complaint, titled "Relief," Plaintiff enumerates various forms of relief he seeks in this action and concludes with a request for "any other relief this Court deems in the interest of justice and public interest." Compl. ¶ 20. Construing the Complaint liberally, as the Court must for a pro se litigant, I am not persuaded that Plaintiff's Complaint seeks only punitive damages for the violations alleged in Claim 1, to the exclusion of all other forms of relief. The prayer for relief at the end of the Complaint is sufficient to encompass any compensatory or nominal damages to which Plaintiff may be entitled for the violations alleged in Claim 1.[2] Defendants' motion to dismiss the individual-capacity claims in Claim 1 is denied.

**B. Claim 2**

In Claim 2 of the Complaint, Plaintiff alleges that the Town of Elkton and the Officer Defendants engaged in prior restraint of activities protected by the First Amendment and that the Officer Defendants' actions towards him are evidence of Elkton's "broad and well circulated pattern and practice" of violating First Amendment rights. Compl. ¶ 12.

Defendants argue that Claim 2 should be dismissed as to Elkton for two reasons. First, the Complaint lacks factual allegations of a widespread pattern or practice. ECF No. 13-1 at 20. Instead, the alleged actions of the Officer Defendants involved only Plaintiff in a single day, which Elkton argues is insufficient to establish the type of widespread pattern or history of an unconstitutional practice required to demonstrate that it has become a policy, practice, or custom. *See id.* at 20–21. Second, the Complaint lacks factual allegations that a final policymaker for Elkton had actual or constructive knowledge of a widespread pattern of conduct and thereafter

[2] "[A]n actual chilling of protected speech is a discrete infringement of First Amendment rights that gives rise to a claim under § 1983 for at least nominal damages." *Rock for Life-UMBC v. Hrabowski*, 411 F. App'x 541, 549 (4th Cir. 2010) (citing *Reyes v. City of Lynchburg,* 300 F.3d 449, 453 (4th Cir. 2002)).

failed to correct or stop it. *Id.* at 21. Defendants also argue that Claim 2 should be dismissed as to the Officer Defendants for the same reasons as Claim 1. *Id.* at 16.

Plaintiff argues that Elkton, through its Police Department, "maintains a policy or custom that treats all sidewalk solicitation as a criminal offense." ECF No. 15 at 10. According to Plaintiff, the involvement of multiple officers in repeatedly telling Plaintiff that panhandling was illegal and threatening arrest evinces an unconstitutional policy or custom. *Id.*

A municipality may be liable under § 1983 only in cases where it causes an official acting under color of state law to violate federal rights "through an official policy or custom . . . ." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citation omitted); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To prevail on a *Monell* claim, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). A policy or custom for which a municipality may be held liable can arise in four ways:

> (1) through an express policy, such as a written ordinance or regulations; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifests" deliberate indifference to the rights of citizens; [or] (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Corbitt v. Balt. City Police Dep't*, Civ. No. RDB-20- 3431, 2021 WL 3510579, at *6 (D. Md. Aug. 10, 2021) (quoting *Lytle*, 326 F.3d at 471). But an unconstitutional policy or custom sufficient to support municipal liability under § 1983 "will not . . . 'be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees.'" *Saltz v. City of Frederick, Md.*, 538 F. Supp. 3d 510, 555 (D. Md. 2021) (quoting *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984)).

Here, in Claim 2, Plaintiff does not allege that Elkton maintained an express policy of threatening sanctions for First Amendment-protected activities, that a final policymaker made an unconstitutional decision that caused the alleged deprivation, or that Elkton was deliberately indifferent in training or supervising its employees. Rather, Plaintiff proceeds under the theory that Elkton maintained an unconstitutional custom or practice.

To establish municipal liability based on a custom or practice, a plaintiff must allege facts showing a practice that is "persistent and widespread." *Lytle*, 326 F.3d at 471; *see also Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987) ("'Custom and usage,' in the sense of 'persistent and widespread . . . practices' by municipal agents and employees, may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees.") (citation omitted). Isolated incidents of alleged misconduct by individual employees are insufficient to establish such an unconstitutional custom or practice. *See Milligan*, 743 F.2d at 230; *Spell*, 824 F.2d at 1387.

> A plaintiff states a claim under *Monell* that a municipality should be held liable for a pattern or practice developed by a municipal police department by alleging that the municipality or its final policymakers had actual or constructive knowledge of the custom and usage, and that those policymakers failed "as a matter of specific intent or deliberate indifference" to correct or terminate the pattern or practice.

*Barnes v. Montgomery Cnty.*, Civ. No. PJM-22-1112, 2023 WL 8454633, at *4 (D. Md. Dec. 6, 2023) (quoting *Randall v. Prince George's Cnty.*, 302 F.3d 188, 210 (4th Cir. 2002)).

Plaintiff's Complaint falls well short of that standard. Although Plaintiff repeatedly characterizes the Officer Defendants' conduct as reflecting a "pattern and practice," those allegations are wholly conclusory. The Complaint identifies only Plaintiff's own alleged encounter with the Officer Defendants and contains no factual allegations regarding any similar incidents

involving other individuals, prior complaints, a history of comparable constitutional violations, or any facts suggesting that policymakers knew of and tolerated such conduct. Simply labeling the challenged conduct a "pattern and practice" does not transform a claim against an officer for a single incident into a plausible *Monell* claim against a municipality. Because Plaintiff has failed to allege facts demonstrating any plausible unconstitutional policy or custom attributable to Elkton that caused the alleged deprivation of Plaintiff's First Amendment rights, Claim 2 must be dismissed as to Elkton.

As to the Officer Defendants, it does not appear from the Complaint that Claim 2 asserts a claim against these individual defendants that is distinct from Claim 1. The gravamen of both counts is that the Officer Defendants violated Plaintiff's First Amendment rights by threatening him with arrest and fine if he continued displaying his "Donate to a Homeless Veteran" sign, which Defendants concede was plausibly protected speech for present purposes. Claim 2 only provides additional argument in support of relief against the Officer Defendants. The Court rejects Defendants' arguments for dismissal of Claim 2 for the same reasons explained in Part III.B *supra*.

**C. Claim 3**

In Claim 3 of the Complaint, Plaintiff alleges that the Town of Elkton caused a violation of his First Amendment rights by failing to train its police officers correctly and that it did so with deliberate indifference to those rights. Compl. ¶ 13.

Defendants argue that Claim 3 should be dismissed as to the Town of Elkton for four independent reasons. First, Plaintiff fails to identify any specific training policy, program, materials, course, instructor, or other aspect of the Elkton Police Department's training that was deficient or that caused the alleged violation of his First Amendment rights. ECF No. 13-1 at 23. Second, Plaintiff fails to allege a sufficient pattern of similar First Amendment violations by Elkton

police officers to establish actual or constructive notice of any deficiency in the Department's training. *Id.* Third, Plaintiff fails to allege that any Elkton policymaker had actual or constructive notice that changes to the Department's training were necessary to prevent violations of the rights at issue. *Id.* at 25. Fourth, Plaintiff fails to allege a causal connection between any purported deficiency in Elkton's training and the alleged deprivation of Plaintiff's First Amendment rights. *Id.*

Plaintiff responds that he has adequately alleged a failure-to-train claim. Specifically, he contends that the Complaint alleges a systemic training deficiency based on his interactions with the Officer Defendants. ECF No. 15 at 12. Plaintiff further argues that Elkton was on notice of a pattern or practice of First Amendment violations through two prior lawsuits against the Town: *Archer, et al. v. Town of Elkton, et al.*, No. 1:07-cv-01991-CCB (D. Md.), and *Meeting Ground, et al. v. Town of Elkton, et al.*, No. 1:08-cv-01766-CCB (D. Md.). *See* Compl. ¶ 13. Finally, Plaintiff argues that the fact multiple officers incorrectly informed him that panhandling was illegal in both Elkton and the State of Maryland demonstrates that Elkton failed to provide adequate training to its officers regarding the First Amendment. ECF No. 15 at 12–13.

To state a plausible *Monell* claim for inadequate training, "the plaintiff must allege facts that reveal: (1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training.'" *Bodden v. Walsh*, Civ. No. ADC-24-01430, 2024 WL 3964914, at *5 (D. Md. Aug. 28, 2024) (quoting *McDowell v. Grimes*, No. GLR-17-3200, 2018 WL 3756727, at *4 (D. Md. Aug. 7, 2018)). The pleading "requires more than bald assertions that police officers were not properly trained." *McDowell*, 2018 WL 3756727, at *4 (quoting *Jones v. Chapman*, Civ. No. ELH-14-2627, 2015 WL 4509871, at *20 (D. Md. July 24, 2015). "[A] plaintiff must allege a 'specific deficiency' with

the training." *Id.* (quoting *Shields v. Prince George's Cty.*, Civ. No. GJH-15-1736, 2016 WL 4581327, at *9 n.11 (D. Md. Sept. 1, 2016)).

Here, Plaintiff's Complaint does not identify any particular training policy, curriculum, program, or practice maintained by Elkton that was constitutionally deficient. Nor does Plaintiff allege facts to show or suggest that any purported deficiency was the result of a deliberate or conscious choice by municipal policymakers. Instead, Plaintiff asks the Court to infer a systemic failure to train from his own encounters with multiple officers on a single day. Those allegations, standing alone, do not establish a plausible claim for municipal liability based on deficient training.

Plaintiff's reliance on *Archer v. Town of Elkton*, Civ. No. CCB-07-1991 (D. Md.), does not alter this conclusion. The *Archer* action was filed in 2007 and resulted in judgments against the Town of Elkton pursuant to Federal Rule of Civil Procedure 68(a) on some claims and settlement of others in 2009. *See* Archer, Civ. No. CCB-07-01991, ECF Nos. 76–84, 89–95. The case involved constitutional challenges to a now-repealed Elkton ordinance regulating loitering and "begging," as well as allegations that Elkton officials targeted homeless individuals. *Id.*, ECF No. 16. To begin, the facts alleged in the instant case are materially different from the circumstances of *Archer*. The plaintiffs there alleged that a town ordinance violated their right of association and ability to ask for money, while Plaintiff here alleges his protected speech was chilled by the threat of arrest for soliciting. The amended complaint in *Archer* did not identify any deficiency in the training of Elkton police officers, much less that Elkton policymakers, in 2024, remained on actual or constructive notice of any such deficiency identified in a lawsuit filed and resolved approximately 15 years prior. *Archer* does not support any failure-to-train claim in the instant case.

Plaintiff's reliance on *Meeting Ground v. Town of Elkton*, Civ. No. CCB-08-1766 (D. Md.), is also misplaced.[3] The Meeting Ground action was filed and voluntarily dismissed with prejudice in July 2008. That case concerned allegations that the Town of Elkton violated the Free Exercise Clause by denying zoning approval for a homeless ministry. *Meeting Ground*, Civ. No. CCB-08-1766, ECF No. 1 (D. Md. July 8, 2008). It did not involve police officers, the training of police officers, or any alleged violations of the rights to freedom of speech or assembly. As such, it has no apparent bearing on whether Elkton policymakers deliberately chose, or were deliberately indifferent to, deficient police training on the First Amendment rights at issue here.

Finally, Plaintiff argues that the fact multiple officers incorrectly informed him that panhandling was illegal in both Elkton and the State of Maryland demonstrates that Elkton failed to adequately train its officers on the First Amendment. True, those allegations suggest that several officers may have shared the same misunderstanding of the law. But "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985)). That is why a municipality's failure to train its employees must amount to "deliberate indifference," which requires "proof that a municipal actor disregarded a known or obvious consequence" that "a particular omission in their training program causes city employees to violate citizens' constitutional rights," and "[chose] to retain that program." *See id.* (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)). The mere fact that multiple officers allegedly acted similarly during an encounter on a single day does not plausibly establish that Elkton maintained a constitutionally deficient training program, or that municipal

[3] Plaintiff's Complaint does not specifically cite *Meeting Ground*, but it describes the facts of that case.

policymakers were deliberately indifferent to a known need for additional training and made a deliberate choice to retain the deficient training. To hold otherwise would permit an inference of an unconstitutional municipal policy or custom based solely on isolated, allegedly unconstitutional conduct of individual officers. *Monell* and its progeny require more. Accordingly, Plaintiff's failure-to-train claim against Elkton shall be dismissed.

### D. Claim 4

In Claim 4 of the Complaint, Plaintiff alleges that Carolyn Rogers, Chief of the Elkton Police Department, is individually liable for failing to adequately train Elkton police officers. Compl. ¶ 14. As an initial matter, "failure to train claims are usually maintained against municipalities, not against individuals[.]" *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005).

> [T]o sustain such an action, a plaintiff must allege either specific conduct and/or direct participation on the part of the supervisory defendant that gave rise to a deprivation of the plaintiff's constitutional rights, or that the supervisory defendant illustrated a deliberate indifference to actions of his or her subordinate, which amounted to a deprivation of plaintiff's constitutional rights.

*Dubon v. Prince George's Cnty.*, Civ. No. DKC 2005-3463, 2006 WL 8456989, at *4 (D. Md. July 27, 2006) (collecting citations) (footnote omitted).[4]

Plaintiff has not alleged facts to satisfy either theory. He does not allege that Chief Rogers personally participated in, directed, or was even present during the events giving rise to his alleged

---

[4] The doctrine of respondeat superior generally does not apply to claims brought under § 1983. *See Iqbal*, 556 U.S. at 676; *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). A claim to hold a supervisor liable under § 1983 for the conduct of a subordinate will generally require a plaintiff to show that (1) the supervisor had actual or constructive knowledge that the subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

constitutional injury. Nor does he plead facts to support any reasonable inference that Chief Rogers was deliberately indifferent to a known deficiency in the training of Elkton police officers. Instead, Plaintiff alleges only that Chief Rogers was responsible for ensuring officers were properly trained regarding citizens' constitutional rights and that a reasonable officer would have known Plaintiff's conduct was protected by the First Amendment. *See* Compl. ¶ 14. Those allegations are conclusory assertions that the alleged constitutional violation must have resulted from inadequate training for which Chief Rogers was responsible. Such allegations are insufficient to state a plausible claim. Accordingly, Claim 4 shall be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. The Complaint is dismissed without prejudice as to the Town of Elkton and Chief Carolyn Rogers. The Claims 1 and 2 in the Complaint are sustained as to the Officer Defendants in their individual capacities. A separate Order will issue.

September 11, 2026
Date

/S/
Matthew J. Maddox
United States District Judge